BLANCO *v.* THE REGISTRAR OF PROPERTY.

APPEAL from a decision of the Registrar of Property of San Juan.

No. 9.—Decided December 17, 1903.

RECORD OF TITLE ⸺PROPERTY RECORDED IN FAVOR OF ANOTHER.—When property transferred or encumbered is recorded in favor of a person other than the one executing the transfer or encumbrance, the registrar shall refuse the requested record.

PROPERTY BELONGING TO THE CONJUGAL PARTNERSHIP.—Property acquired by any of the spouses for a valuable consideration during the marriage shall be considered as of the conjugal partnership, unless it be proven that it was acquired with property belonging exclusively to the husband or to the wife .

ID.—ALIENATION OF PROPERTY BELONGING TO THE CONJUGAL PARTNERSHIP ⸺INTERVENTION OF HEIRS.—Property acquired for a valuable consideration during the marriage, though recorded in the name of the husband, shall be considered as property belonging to the conjugal partnership; and a conveyance of said property made by the husband after the death of the wife, cannot be recorded, if it appears that no liquidation of the property belonging to said partnership had been made, unless the consent of all the heirs of the wife to such conveyance should have been obtained or they should have renounced their rights to said property.

ID.—The fact that the husband should have paid out of his personal funds, after the death of his wife, certain mortgages constituted upon the property acquired during the marriage, does not affect the force of the doctrine or principle enunciated in the foregoing paragraph, because the title of the original acquisiton is still the same and the payment made by the husband under such circumstances could only give rise to a liquidation of accounts between the husband and the heirs of the wife.

DEFECTS NOT CAPABLE OF CORRECTION.—If the obligation entered into by means of an instrument should be intrinsically null and void, the defect shall be con-

expreso de la mujer implica un defecto que produce la nulidad de la obligación, y constituye, por consiguiente, una falta insubsanable que impide la inscripción del documento en el Registro de la Propiedad.

### EXPOSICIÓN DEL CASO.

*Visto* el presente recurso gubernativo interpuesto por Don Julián Blanco contra negativa del Registrador de la Propiedad de esta Capital á inscribir una escritura de venta de finca urbana.

*Resultando:* que por escritura pública otorgada en esta Capital ante el Notario de la misma, Don Gabriel Guerra y Acosta, como sustituto del de la misma clase, Don Mauricio Guerra Mondragón y Mejías, en veinte de Agosto último, Doña Mercedes, Doña Isabel y Doña María Carlota Blanco Pérez y Don Julián E. Blanco y Sosa, vendieron á Don Antonio Blanco y Pérez, por el precio y bajo las demás condiciones que se expresan en dicha escritura, la casa número noventa y uno de la calle de San Francisco de esta Capital, valorada en la testamentaría de su primitivo dueño Don Lucas Pérez y Pérez, en la suma de diez y ocho mil pesos mexicanos, de los cuales, mil novecientos cincuenta y tres pesos treinta y ocho centavos correspondían á las tres primeras comparecientes, por herencia de su abuelo el expresado Don Lucas Pérez y Pérez, y el resto de diez y seis mil cuarenta y seis pesos sesenta y dos centavos al otro compareciente Don Julián Blanco y Sosa; de ellos, dos mil novecientos sesenta y siete pesos ochenta y siete centavos, por haber satisfecho á los herederos Medina, tan luego llegaron á su mayor edad, una hipoteca por igual suma que tenían sobre la casa objeto de esta compra-venta, y para cuyo pago se le había adjudicado en ella una suma igual como Albacea del citado Don Lucas Pérez, según constaba en la divisoria de sus bienes, y el resto de trece mil setenta y ocho pesos setenta y cinco centavos, por compras hechas á diferentes partícipes que se enumeran en la expresada escritura, en la

sidered as not capable of correction, which precludes its record in the regis-
try of property .

## STATEMENT OF THE CASE.

The hearing has been had in this appeal taken by Julián Blanco from a decision of the Registrar of Property of this city, refusing the admission to record of a deed of sale of certain city property.

By a public instrument executed in this city before Notary Gabriel Guerra y Acosta, acting as substitute for Maurico Guerra Mondragón y Mejías, also a notary public, on August 20, 1903, Mercedes, Isabel and María Carlota Blanco Pérez and Julián E. Blanco y Sosa, sold to Antonio Blanco y Pérez, for the consideration and under the other conditions specified in said instrument, house No. 91, on San Francisco street, in this city, valued in the testamentary proceedings of the original owner thereof, Lucas Pérez y Pérez, at the sum of eighteen thousand Mexican *pesos,* whereof one thousand nine hundred fifty-three *pesos* and thirty-eight *centavos* belonged to the three first mentioned parties, by inheritance from their grandfather, the aforesaid Lucas Pérez y Pérez, and the remaining sixteen thousand forty-six *pesos* and sixty-two *centavos* to the other party, namely Julián Blanco y Sosa; of this sum, two thousand nine hundred sixty-seven *pesos* and eighty-seven *centavos,* was the amount of a mortgage on the house, object of this deed of sale, paid by him to the heirs of Medina on reaching their majority, and for which he had been assigned a like sum, as executor of aforesaid Lucas Pérez, the same being recorded in the proceedings had for the division of the latter's property; the remaining thirteen thousand and seventy-eight *pesos* and seventy-five *centavos,* being the amount of purchases made from the several parties owning interests in the property and who are mentioned in aforesaid instrument, wherein the parties appearing fur-

que declaran además los comparecientes, que la participa-
ción que corresponde en la casa á Don Julián Blanco, se halla
afecta, entre otras cargas, al pago á Don Julio y Don
Guillermo Pérez Acosta de la suma de treinta y cinco pesos
doscientas treinta y siete milésimas mexicanos, que á cada uno
de ellos dejó de abonarse al comprarles sus respectivas parti-
cipaciones en la casa, ó sea su equivalente de veinte pesos
ocho y medio centavos oro americano, y á Don Lucas Blanco
y Pérez, de los noventa pesos cuarenta y seis centavos de la
participación que le correspondía en la propia casa y que así
mismo había vendido al Don Julian E. Blanco y Sosa, y de
la que por haber perdido la razón el Don Lucas, no llegó á
otorgarle la correspondiente escritura de venta, la que le
sería otorgada por su legítima representación tan luego se
le proveyera de ella; é insertándose además en dicha escri-
tura, literalmente, la cláusula siguiente:

"4º.—Que como consta á todos los comparecientes, sobre la casa
descrita, absolutamente pesa ninguna otra carga, gravamen ni servi-
dumbre de ninguna especie; sin embargo, para mayor claridad y
evitar toda duda en lo por venir, se hace constar lo siguiente: que
al otorgarse la última escritura hipotecaria á favor del Banco Colo-
nial Americano, en que se refundieron las anteriores, se hizo el re-
paro por el Sr. Registrador de la Propiedad, de no poder hipote-
car el Sr. Blanco y Sosa la participación de dos mil novecientos
sesenta y siete pesos ochenta y siete centavos que como Albacéa de
Don Lucas Perez y Perez se le adjudicaron en su testamentaría, en
parte del valor de la casa referida para pagar la hipoteca que sobre
ella pesaba por la misma suma á favor de los herederos Medina, por
no haberse liquidado la sociedad conyugal que en la época de dicha
adjudicación tuviera el compareciente Blanco y Sosa con su pri-
mera esposa, entonces viva, Doña Antonia María Perez y Real; que
sin embargo de que tal adjudicación hecha en su carácter de Albacea
y para el pago de una deuda de Don Lucas Perez, no importaba una
adjudicación del esposo de Doña Antonia ni podía figurar como
gananciales de la sociedad conyugal que entre ellos mediara, mucho
menos constando que hasta después de viudo no venció ni pudo
pagar esa deuda el Sr. Blanco y Sosa, que fué cuando realmente ad-

ther declare that the share belonging to Julián E. Blanco in the house is subject, among other liabilities, to the payment to Julio and Guillermo Pérez Acosta of the sum of thirty-five *pesos* and twenty-three and seven-tenths *centavos,* Mexican coin, which were left unpaid upon his purchase of their respective shares in the house, or twenty dollars and eight and one-half cents, United States currency, each, and to Lucas Blanco y Perez ninety *pesos,* forty-six *centavos,* of his share in the same house, sold also to Julián E. Blanco y Sosa, said Lucas being unable to execute the deed of sale thereof, owing to his having lost his reason, but which deed would be executed by his legal representative as soon as appointed. The following clause was also inserted in said instrument:

"4. That, as is well known by all the parties appearing, the house is subject to absolutely no other liability, encumbrance or easement of any sort. However, for the sake of clearness, and to avoid any doubt in the future, the following statement is made: When the last mortgage deed was executed in favor of the American Colonial Bank, in which the previous ones were re-established, the Registrar of Property notified Blanco y Sosa that he could not mortgage the share of two thousand nine hundred and sixty-seven *pesos* and eighty-seven *centavos* assigned to him as executor of Lucas Pérez y Pérez in the latter's testamentary proceedings, in part of the value of said house, to pay the mortgage thereon in a similar sum due the heirs of Medina, because the conjugal partnership existing at the time the assignment was made, between him and his first wife, Antonia María Pérez y Real, then living, had not been liquidated; that although such an assignment made in his capacity as executor and for the satisfaction of a debt of Lucas Pérez was not in the nature of an assignment made by Antonia's husband, nor could it be treated as belonging to the conjugal partnership existing between them, especially when said debt did not fall due nor could it be paid by Blanco y Sosa until after he had become a widower, and then it was when, with his own money he really did acquire aforesaid

quirió, mediante el pago de su propio peculio, la mencionada participación, inscrita exclusivamente á su nombre en el Registro de la Propiedad, de los nueve descendientes y herederos que á su muerte dejara Doña Antonia Perez y Real, seis de ellos, Don Marcos, Don Antonio, Don José, Doña Mercedes, Doña Isabel y Doña María Carlota Blanco Perez, reconocieron y declararon explícitamente por escritura pública otorgada igualmente en este protocolo, en treinta de Diciembre del mil novecientos dos, de acuerdo con lo manifestado anteriormente, que ni ellos, ni sus demás coherederos tenían ni podían reclamar parte alguna de los dos mil novecientos sesenta y siete pesos ochenta y siete centavos antes referidos, en que nunca tuvo participación alguna su difunta madre; no haciendo igual declaración los otros tres herederos por haber fallecido en la menor edad, Don Juan Blanco Perez y Don Julián Blanco Steel, hijo y nieto, respectivamente, de la finada Doña Antonia Perez, al primero de los cuales ha sucedido su padre, el compareciente Blanco y Sosa, y al segundo su madre ausente, Doña Natalia Steel, sin que ésta ni aquél hayan obtenido aun la declaratoria de herederos y por el estado de demencia en que se halla el otro heredero, Don Lucas Blanco Perez, según se ha dicho.    Que si bien en virtud de esas declaraciones el Sr. Registrador ha reconocido que el compareciente Blanco y Sosa puede disponer é hipotecó válidamente la parte que en la cantidad de que se trata podían reclamar á su juicio los seis herederos antes nombrados, ha insistido en que la porción correspondiente á los otros tres herederos Don Lucas y Don Juan Blanco Perez y Don Julián Blanco Steel debe reservárseles; de manera que bajo el supuesto de considerarse como ganaciales de la primer sociedad conyugal del Sr. Blanco y Sosa los dos mil novecientos sesenta y siete pesos ochenta y siete centavos y de pertenecer á su esposa difunta, Doña Antonia Perez Real la mitad de esa suma, ó sean mil cuatrocientos ochenta y tres pesos noventa y tres y medio centavos mexicanos, equivalentes á ochocientos cuarenta y cinco dollars ochenta y cuatro centavos oro americano, correspondería á cada uno de sus nueve descendientes y herederos, noventa y tres pesos noventa y ocho y cuarto centavos oro americano y por consiguiente á los tres herederos cuyo derecho ha reservado el Registrador, aunque los comparecientes no les reconocen ninguno, doscientos ochenta y un dollars noventa y cuatro y tres cuartos centavos de dicha moneda nacional.''

*Resultando*: que presentada dicha escritura para su ins-

share, which was recorded in his name only at the Registry of Property, through purchase from the nine descendants and heirs left at her death by Antonia Pérez y Real, six of whom, namely, Marcos, Antonio, José Mercedes, Isabel and María Carlota Blanco Pérez, acknowledged and declared explicitly by public instrument, also executed in this office on the 30th of December, 1902, in conformity with their previous statement, that neither themselves nor the other coheirs had, or could have, a right to claim any portion of the aforesaid two thousand nine hundred and sixty-seven *pesos* and eighty-seven *centavos*, in which their deceased mother had no interest whatever; the other three heirs not having made the same declaration, because Juan Blanco y Pérez y Pérez and Julián Blanco Steel, son and grandson, respectively, of the deceased Antonia Pérez, had died during their minority, the former of whom was succeeded by his father, Blanco y Sosa, and the latter by his mother, Natalia Steel, now absent, neither of these two last mentioned having been declared heirs; and as to the other heir, Lucas Blanco y Pérez, because of his having lost his reason as before stated. That although on the strength of these declarations, the Registrar has admitted that Blanco y Sosa can validly dispose of, or mortgage, the portion of the sum in question that could have been claimed by the six heirs hereinbefore mentioned, he insisted that the portion belonging to the other three heirs, namely, Lucas, Juan Blanco y Pérez and Julián Blanco Steel, should be reserved to them. So that, upon the supposition that the two thousand nine hundred and sixty-seven *pesos* and eighty-seven *centavos* appertained to the first conjugal partnership of Blanco y Sosa, and that one-half thereof, say, one thousand four hundred and eighty-three *pesos* and ninety-three and one-half *centavos*, Mexican money, or eight hundred and forty-five dollars and eighty-four cents, United States currency, belonging to his deceased wife, Antonia Pérez Real, each of her nine descendants and heirs would be entitled to ninety-three dollars and ninety-eight and one-quarter cents, United States currency, and, therefore, the three heirs whose right has been reserved by the registrar, although the parties appearing do not recognize them as having any, would be entitled to two hundred and eighty-one dollars and ninety-four and three-quarter cents, United States currency."


Aforesaid deed having been presented for record at the

cripción en el Registro de la Propiedad de esta Capital, la admitió en parte, y en parte la denegó el Registrador, por los fundamentos que expresa la nota puesta al pie de la referida escritura y que copiada á la letra dice así:

"Inscrito el anterior documento en cuanto á la venta é hipoteca que comprende sobre la finca en el mismo descrita, con excepción de las participaciones que se dirán, al folio 135 del tomo 50 de San Juan, finca 202 Nonuplicado, inscripción 38 A. No admitida la inscripción respecto de la venta en cuanto á las participaciones de treinta y cinco pesos veinte y tres centavos mejicanos, que en la finca interesan cada uno de Don Julio y Don Guillermo Pérez Acosta y de noventa pesos cuarenta y seis centavos de Don Lucas Blanco y Pérez y las que puedan pertenecer á Don Lucas y Don Juan Blanco y Pérez y Don Julián Blanco Steel en la mitad del condominio de dos mil novecientos sesenta y siete pesos ochenta y siete centavos mejicanos adjudicado á Don Julian E. Blanco en la testamentaría de Don Lucas Pérez, con arreglo al Artículo 20 de la Ley Hipotecaria; y en cuanto á las participaciones adquiridas por el Sr. Blanco y Sosa por compra á Don Antonio, Don Marcos y Don José Blanco y Pérez, Doña Manuela Pérez Martínez y Doña Palmira y Doña María Pérez Acosta, por verificar la enajenación aquél sin el consentimiento de su esposa, según lo exige el Artículo 159 del Código Civil; y no admitida la inscripción de la hipoteca sobre las participaciones mencionadas que han sido objeto de la negativa respecto de la venta, por no quedar inscritas á favor del adquirente Don Antonio Blanco y Pérez, no pudiendo, por tanto, disponer de ellas como dueño; y se ha extendido anotación de la venta é hipoteca de referencia, en cuanto á las participaciones que han sido objeto de la negativa en la citada inscripción 38-A., cuya anotación tendrá efecto legal durante 120 días de la fecha. San Juan Bautista de Puerto Rico, Octubre quince de mil novecientos tres.—El Registrador, José Benedicto".

*Resultando*: que notificada la negativa del Registrador á Don Julián Blanco y Sosa, pidió éste se elevara el documento á esta Superioridad para la resolución que procediera, como así lo verificó el Registrador con la comunicación correspondiente.

Registry of Property of this city, the same was admitted in part and refused in part by the registrar, for the reasons stated in the decision entered at the end of the same, and which literally reads as follows:

"The above document, as regards the sale of and the mortgage upon the property described therein, with the exception of the shares hereinafter to be mentioned, is recorded at folio 135, vol. 50, of San Juan, property 202, ninefold, entry 38A. As regards the shares of thirty-five *pesos* and twenty-three *centavos,* Mexican money, appertaining each to Julio and Guillermo Pérez Acosta, and of ninety *pesos* and forty-six *centavos* belonging to Lucas Blanco y Pérez, and the interest Lucas and Juan Blanco y Pérez and Julián Blanco Steel, may be entitled to in half the two thousand nine hundred and sixty seven *pesos* and eighty-seven *centavos,* Mexican currency, assigned to Julián E. Blanco in the testamentary proceedings of Lucas Pérez, the record of the sale thereof is refused, under article 20 of the Mortgage Law; as also that of the shares acquired by Blanco y Sosa through purchase from Antonio, Marcos and José Blanco y Pérez, Manuela Pérez Martínez and Palmira and María Pérez Acosta, because the alienation thereof is made by him without the consent of his wife, as required by article 159 of the Civil Code; and record of the mortgage upon the above-mentioned shares the sale whereof has been refused admission to record is denied because the same have not been recorded in favor of the vendee Antonio Blanco y Pérez, who therefore, cannot dispose of them as the owner thereof. Notice of aforesaid sale and mortgage has been entered with respect to the shares whose record is refused in the above named entry 38A, which notice shall have legal effect during one hundred and twenty days from the date hereof. San Juan, Porto Rico, October 15, 1903. José Benedicto, Registrar."

Notice of the registrar's refusal having been served upon Julián Blanco y Sosa, he requested that the instrument be sent up to this Supreme Court for decision, which was done by the registrar with the proper communication.

El Juez Presidente Sr. Quiñones, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal:

*Considerando*: en cuanto al primer extremo de la negativa del Registrador, que careciendo Don Julián Blanco y Sosa de título de dominio inscrito de las participaciones que corresponden en la casa de que se trata á Don Julio y Don Guillermo Pérez y Acosta y Don Lucas Blanco y Pérez, y constando inscritas á nombre de éstos en el Registro de la Propiedad, es de rigurosa aplicación al caso el Artículo 20 de la Ley Hipotecaria, según el que, si los bienes enagenados ó gravados aparecen inscritos á nombre de persona distinta de la. que los transfiere ó grava, debe el Registrador denegar la inscripción del documento.

*Considerando*: en cuanto al segundo extremo de la nota del Registrador, que importando una verdadera adquisición del derecho de dominio, á título oneroso, la adjudicación que se hizo á Don Julián Blanco y Sosa en la divisoria de la testamentaría de su suegro Don Lucas Pérez y Pérez, en el valor de la casa número 91 de la calle de San Francisco de esta Capital, de una participación por la suma de dos mil novecientos sesenta y siete pesos ochenta y siete centavos mejicanos, para pagar una deuda hipotecaria por la misma cantidad que pesaba sobre la casa citada, y habiendo tenido lugar dicha adjudicación en época en que estaba todavía vigente el matrimonio del Señor Blanco con su primera esposa, Doña Antonia Pérez, es indudable que la participación en el valor de la casa, así adquirida, pertenecía á la sociedad conyugal, con arreglo á la legislación vigente cuando tuvo lugar dicha adjudicación, ó sea en el año de mil ochocientos ochenta y uno en que se hizo y fué aprobada la divisoria de los bienes de Don Lucas Pérez, y según la cual, los bienes adquiridos por cualquiera de los esposos á títulos oneroso, durante el matrimonio, debían considerarse de la sociedad conyugal, á menos que se probase que hubiesen sido adquiridos con bienes propios del marido ó de la mujer,

MR. CHIEF JUSTICE QUIÑONES, after making the above statement of facts, delivered the opinion of the court as follows:

As regards the first reason for his refusal, urged by the registrar, namely that inasmuch as Juliffin Blanco y Sosa has no record of his ownership of the shares pertaining to Julio and Guillermo Pérez y Acosta, and Lucas Blanco y Pérez, in the house in question, said ownership being recorded in their favor in the Registry of Property, the provision contained in article 20 of the Mortgage Law must be strictly complied with, according to which, if the property transferred or encumbered is recorded in favor of a person other than the one executing the transfer or encumbrance, the registrar shall refuse to make the record requested.

As to the second reason alleged in the registrar's memorandum, inasmuch as the assignment awarded to Julián Blanco y Sosa in the testamentary proceedings for the division of the estate of his father-in-law, Lucas Pérez y Pérez, of a share in the value of house No. 91 on San Francisco street, in this city, amounting to two thousand nine hundred and sixty-seven *pesos* and eighty-seven *centavos*, Mexican money, for the payment of a mortgage upon said house for a like sum, it was in reality an acquisition of property for a valuable consideration; and as said assignment or award occurred when his first wife, Antonia Pérez, was still living, there is no doubt that the share in the value of the house, thus acquired, belonged to the conjugal partnership, according to the law in force at the time said award was made, namely, in the year 1881, when the division of the estate of Lucas Pérez was made and approved, and according to which property acquired by any of the spouses for a valuable consideration during the marriage shall be considered as of the conjugal partnership, unless it be proven that it was acquired with property belonging exclusively to the husband or to the wife, upon which point the old Civil Code agreed with the one now in force; and as, on the other hand, it does not appear that the estate

en lo que era conforme el antiguo Código Civil y lo es el vigente; y no constando por otra parte que se hubiese liquidado la testamentaría de Doña Antonia Pérez, no ha podido vender Don Julián Blanco válidamente el condominio de que se trata, al menos por lo que respecta á Don Lucas y Don Juan Blanco y Pérez y Don Julián Blanco Steel, que no han renunciado al derecho que pudieran tener sobre el expresado condominio, como herederos de la difunta Doña Antonia Pérez.

*Considerando*: que en nada se oponen á las anteriores conclusiones las circunstancias de haberse adjudicado á Don Julián Blanco y Sosa la participación de que se trata en la casa de la calle de San Francisco, como albacea que era de la testamentaría de su difunto suegro Don Lucas Pérez y Pérez, ni la de haber pagado la hipoteca que pesaba sobre la citada casa con posterioridad á la muerte de su primera esposa, Doña Antonia Pérez, y con dinero de su propio peculio, como lo consigna en la escritura; lo primero, porque á virtud de la adjudicación hecha al albacea Don Julián Blanco, el dominio de la participación que le transferían los herederos en el valor de la casa, lo adquiría Don Julián Blanco y Sosa en su nombre particular, sin más responsabilidad que la de pagar la hipoteca que pesaba sobre la casa; y lo segundo, porque aun cuando el pago lo hubiera verificado después de disuelto su matrimonio con Doña Antonia Pérez y con dinero de su propio peculio, lo que no se ha probado en ninguna forma, esta circunstancia no alteraría en lo más mínimo el verdadero concepto de la adquisición del dominio, en su origen, y sólo daría lugar en su caso á un arreglo ó liquidación de cuentas entre el viudo Don Julián Blanco y los herederos de su primera mujer.

*Considerando*: por lo que se refiere al tercero y último extremo de la nota del Registrador, que no habiendo comparecido en la escritura la segunda esposa del vendedor Don Julián Blanco á prestar su consentimiento para la venta de

of Antonia Pérez has been liquidated, Julián Blanco y Sosa had no power validly to sell the joint share in question, at least so far as Lucas and Juan Blanco y Pérez and Julián Blanco Steel, are concerned, they not having waived the right they may have in aforesaid joint share, as heirs of the deceased Antonia Pérez.

The foregoing conclusions are not destroyed by the fact that the share in question in the San Francisco street house was awarded to Julián Blanco y Sosa, as testamentary executor of his father-in-law, Lucas Pérez y Pérez, or because he had paid the mortgage on said house subsequently to the death of his first wife, Antonia Pérez, with money belonging exclusively to himself, as stated in the document; in the first place, because by virtue of the adjudication made to the executor Julián Blanco, the title to the share transferred to him by the heirs in the value of the house, was acquired by Julián Blanco y Sosa, in his name as a private individual, without any responsibility other than that of satisfying the mortgage upon the house; in the second place, because, even though the payment had been made after the dissolution of his marriage with Antonia Pérez and with money belonging to himself, which has not been proven in any manner, this circumstance would not alter in the least the nature of the acquisition of the title in its origin and would only be the occasion, in any event, for a settlement or liquidation of accounts between the widower, Julián Blanco, and the heirs of his first wife.

As to the third or last reason alleged in the registrar's decision to the effect that inasmuch as the second wife of the vendor, Julián Blanco, had not appeared, at the execution of the document, to give her consent to the sale of

las diferentes participaciones, que según resulta de aquel documento ha adquirido el vendedor después de haber pasado á segundas nupcias, con arreglo al Artículo 159 del nuevo Código Civil, adolece la venta de un defecto que produce la nulidad de la obligación, y que según el Artículo 110 del Reglamento de la Ley Hipotecaria constituye una falta insubsanable, que impide su inscripción en el Registro de la Propiedad.

*Considerando*: por tanto, que no quedando inscrito á favor del comprador Don Antonio Blanco y Pérez el dominio de las participaciones á que se refieren los considerandos anteriores, carece de título hábil para hipotecarlas válidamente.

*Vistas* las disposiciones legales citadas. *Se aprueba* en todas sus partes la nòta puesta por el Registrador de la Propiedad de esta Capital al pie de la escritura de compra-venta de que se trata, y devuélvase ésta con copia de la presente resolución al Registrador de la Propiedad para su conocimiento y demás efectos procedentes.

Jueces concurrentes: Sres. Hernández, Figueras y Mac-Leary.

El Juez Asociado Sr. Sulzbacher no intervino en la resolución de este caso.

the various shares which, as appears from said document, were acquired by the vendor after his second marriage, according to section 159 of the Civil Code, the sale contains a defect which renders the obligation null and void, the same constituting, according to article 110 of the Regulations for the Execution of the Mortgage Law, a defect not capable of correction, which precludes the admission of the same to record in the Registry of Property.

Inasmuch, therefore, as the ownership of the shares referred to herein are not recorded in favor of the vendee, Antonio Blanco y Pérez, he lacks authority to mortgage the same in a valid manner.

In view of the legal provisions cited above, the decision placed by the Registrar of Property of this city at the end of the deed of purchase and sale in question, is approved in all its parts, and said deed is ordered to be returned with a copy of this decision to the Registrar of Property for his information and guidance.

Justices Hernández, Figueras and MacLeary concurred.

Mr. Justice Sulzbacher took no part in the decision of this case.